IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Erik Salaiz**, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff | § § § | |
| *versus* | § § | |
| **INSUREFARM INC,** a Florida Corporation | § § § | **Civil Action No. 3:24-CV-390** |
| Defendant, | § § | |
| And | § § | **DEMAND FOR JURY TRIAL** |
| **JUBRAN ABDULAZIZ** | § § | |
| Defendant, | § § | |
| And | § § | |
| **Jane/John Doe** | § § | |
| Defendant. | § § | |

CLASS ACTION COMPLAINT

PLAINTIFF'S ORIGINAL COMPLAINT

**INTRODUCTION**

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Insurefarm Inc., ("Insurefarm") and Jubran Abdulaziz ("Abdulaziz") to stop their illegal practice of placing, through its telemarketers, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

**PARTIES**

1. Plaintiff Erik Salaiz (hereinafter "Mr. Salaiz") is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Mr. Salaiz may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

3. Defendant Insurefarm Inc (hereinafter "Insurefarm") is a corporation organized and existing under the laws of Florida and can be served via its registered agent Jubran Abdulaziz at 10080 Vestal Place, Coral Springs, Florida 33071.

4. Defendant Jubran Abdulaziz (hereinafter "Abdulaziz") is the President of Defendant Insurefarm residing in the State of Florida. Defendant Abdulaziz can be served at 10080 Vestal Place, Coral Springs, Florida 33071.

5. Upon information and belief, unnamed party Jane/John Doe is an unidentified telemarketing company making solicitation phone calls at the instruction, direction, and oversight of Defendants Insurefarm and Abdulaziz.

6.  Defendant Insurefarm and Abdulaziz are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

7.  This action is brought by Mr. Salaiz pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

8.  This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331, and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

9.  This Court has general personal jurisdiction over the Defendants as they, upon information and belief, authorized telemarketers to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

10. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of

events giving rise to the claim alleged herein occurred within the Western District of
Texas,

STATEMENT OF FACTS

11.   Mr. Salaiz realleges paragraphs one through ten and incorporates them herein as if set
forth here in full.

12.   Mr. Salaiz's personal cell phone (XXX) XXX-6805 has been registered on the National
Do-Not-Call Registry since May 19, 2022.

13.   Mr. Salaiz has never instructed the National Do-Not-Call Registry administrator to
remove him from the National Do-Not-Call Registry. Mr. Salaiz has been on the National
Do-Not-Call Registry at all times relevant to this Complaint.

14.   Mr. Salaiz's telephone number 6805 is a residential number.

15.   Mr. Salaiz's telephone number 6805 is used for personal purposes and is not associated
with business.

16.   Upon information and belief, Defendant Insurefarm is owned and controlled by
Defendant Abdulaziz.

17.   Upon information and belief, Defendant Insurefarm operates as a life insurance broker
and offers final expense insurance to consumers.

18.   Upon information and belief, as part of their marketing, Defendant Abdulaziz contracted
with Jane/John Doe to make solicitation calls to hundreds if not thousands of consumers'
residential phone numbers on behalf of Defendant Insurefarm.

19.   Jane/John Doe an unknown entity is believed to be located offshore and out of the
jurisdiction of the United States and the State of Texas.

20. Upon information and belief, Defendant Abdulaziz authorizes the payments to Jane/John Doe.

21. Upon information and belief, Defendant Abdulaziz pays Jane/John Doe out of Defendant Insurefarm's bank accounts that they own and control.

22. Defendant Abdulaziz approves of the prerecorded voice message Jane/John Doe uses as part of Defendant Insurefarm's marketing campaign.

23. Each and every telemarketing call Mr. Salaiz received from Jane/John Doe calling on behalf of Defendants Insurefarm and Abdulaziz all started with the same artificial or prerecorded voice message.

24. The artificial or prerecorded voice message does not identify neither Defendants Insurefarm or Abdulaziz.

25. Mr. Salaiz has never had any relationship with Defendants Insurefarm or Abdulaziz or has ever been a customer of Defendants and never gave them his prior express written consent to receive the alleged calls in this case.

26. Mr. Salaiz received at least seven (7) telemarketing calls that started with the same exact artificial or prerecorded voice message to his personal cell phone 6805 within a month period from Jane/John Doe calling on behalf of Defendants Insurefarm and Abdulaziz ("the calls").

27. The calls were all made to Plaintiff for the purpose of encouraging the purchase of a final expense insurance plan on behalf of Defendants Insurefarm and Abdulaziz.

28. Jane/John Doe spoofed the caller ID on each and every alleged call in order to disguise their identity.

29. Mr. Salaiz believes that additional telemarketing calls from Jane/John Doe soliciting final expense insurance were made on behalf of Defendants Insurefarm and Abdulaziz that are unknown to Mr. Salaiz at this time but will be revealed during discovery.

30. Calls #1-6 – Mr. Salaiz answered each call and heard the same artificial or prerecorded voice message soliciting final expense insurance:

"Funeral expenses and based on our records it shows that you may qualify for a state regulated final expense insurance plan that's going to cover one hundred percent of your funeral, burial and cremation expense. Are you between the ages of fifty to eighty? Have you ever been diagnosed with any major or minor health issues like high blood pressure, diabetes, dementia or cancer? Great. This is just to confirm if you qualify for an additional discount, how old are you? Well, we're not asking you to make any decision right away first, we'll let you know how much it's going to cost you, what the benefits are, and the discounts that you qualify for then you decide what to do next okay? Do you smoke or chew tobacco? Ok, so all it's done here and it's time for me to show you the information and for that I'll get you connected with one of my supervisors and he will be providing you with all the further incremental details. Alright?"

31. Calls #1-6 – Mr. Salaiz did not request information regarding final expense insurance and disconnected the call each time.

32. The artificial or prerecorded voice message played in the alleged calls did not identify neither Defendants Insurefarm or Abdulaziz.

33. The alleged calls were clearly pre-recorded using an artificial or prerecorded voice.

34. Call #7 – Mr. Salaiz answered and heard the same artificial or prerecorded voice message in calls 1-6.

35. Mr. Salaiz was annoyed and frustrated due to receiving the same artificial or prerecorded voice message and engaged in the call as it was the only way to identify who was behind the calls.

36. Mr. Salaiz was connected to a female telemarketer with a foreign accent who did not identify herself.

37. The telemarketer advised Mr. Salaiz that the call was transferred to her to qualify Plaintiff for a final expense insurance plan.

38. The telemarketer asked Mr. Salaiz qualifying questions regarding Mr. Salaiz's health history and collected Mr. Salaiz's personal information.

39. Defendant Abdulaziz provides Jane/John with specific qualifications a consumer must meet for a final expense insurance plan prior to transferring the call to Defendant Insurefarm.

40. The telemarketer advised Plaintiff that she would be bringing the benefit coordinator on the call who would provide Mr. Salaiz with the details on a final expense insurance plan.

41. Without any interruption or disconnection of the call, the telemarketer live transferred Plaintiff to an agent with Defendant Insurefarm named Terry Petit ("Terry").

42. The telemarketer asked Terry to take over the call to assist Mr. Salaiz and Terry accepted the transfer.

43. Terry advised Mr. Salaiz he was the senior benefit coordinator who will be assisting regarding a final expense insurance plan.

44. Terry asked Mr. Salaiz additional qualifying questions and solicited Plaintiff for a final expense insurance plan on behalf of Defendants Insurefarm and Abdulaziz.

45. The final expense insurance plan Terry solicited to Plaintiff was with Liberty Bankers, policy number 337938L for $30,000 coverage for $58.04/mnth.

46. Terry advised Mr. Salaiz the name of Terry's company was Defendant Insurefarm and the owner of the company was Defendant Abdulaziz.

47. Terry advised Mr. Salaiz that Defendant Insurefarm is a broker company who works with all the major insurance carriers.

48. Defendants Insurefarm and Abdulaziz would get paid a commission fee from Liberty Bankers for the final expense insurance plan solicited to Plaintiff.

49. Terry advised Mr. Salaiz that Defendant Abdulaziz is Terry's direct supervisor and would be the one assigned to Mr. Salaiz's insurance plan.

50. Terry transferred Mr. Salaiz to another agent with Defendant Insurefarm named Kaielle Steinruck ("Kaielle.")

51. Kaielle advised Mr. Salaiz she was going to put Liberty Bankers on the line for a phone interview as part of the process for the final expense insurance plan.

52. Mr. Salaiz heard a representative from Liberty Bankers named Marie come on the line.

53. One of the questions Marie asked Kaielle was "how was this application taken?" Kaielle then replied and stated, "tele-sales."

54. The table below displays the calls made to Mr. Salaiz by Jane/John Doe on behalf of Defendants Insurefarm and Abdulaziz.

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| 1. | 7/1/2024 | 9:47 AM | 915-220-1459 | Prerecorded voice message. Disconnected the call. |
| 2. | 7/5/2024 | 9:22 AM | 915-590-0406 | Same prerecorded voice message as call one. Disconnected the call. |
| 3. | 7/6/2024 | 8:03 AM | 915-400-2169 | Same prerecorded voice message as call one. Disconnected the call. |
| 4. | 7/6/2024 | 9:40 AM | 915-400-3458 | Same prerecorded voice message as call one. Disconnected the call. |

| 5. | 7/12/2024 | 9:12 AM | 915-465-1601 | Same prerecorded voice message as call one. Disconnected the call. |
| 6. | 7/15/2024 | 10:21 AM | 915-600-1578 | Same prerecorded voice message as call one. Disconnected the call. |
| 7. | 7/15/2024 | 12:25 PM | 910-492-5995 | Same prerecorded voice message as call one. Live transferred to Defendant Insurefarm. |

55. Upon information and belief, Defendants Insurefarm and Abdulaziz employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

56. Upon information and belief, neither Defendants Insurefarm or Abdulaziz do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through Jane/John Doe.

57. Mr.Salaiz is a Texas resident. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither of the Defendants' registration.

58. Neither Defendants Insurefarm or Abdulaziz don't qualify for an exemption under § 302.053.

59. Mr. Salaiz never provided his prior express written consent to receive any of the calls.

60. The calls were nonconsensual encounters that were not made for emergency purposes.

61. Upon information and belief, the calls were placed while knowingly ignoring the national do-not-call registry.

62. Upon information and belief the calls were placed without training their telemarketers and/or agents on the use of an internal do-not-call policy.

PLAINTIFF'S ORIGINAL COMPLAINT

9

## BASIS FOR LIABILITY

63. Mr. Salaiz realleges paragraphs one through sixty-two and incorporates them herein as if set forth here in full.

64. Even if Defendants Insurefarm or Abdulaziz did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

65. Mr. Salaiz realleges paragraphs one through sixty-four and incorporates them herein as if set forth here in full.

66. Defendant Insurefarm and/or Abdulaziz authorized and hired Jane/John Doe to generate prospective customers through illegal telemarketing calls.

67. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

68. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

69. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable

for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

the calls. 28 FCC Rcd at 6586 (¶ 34).

70. Defendant Jane/John Doe solicited Mr. Salaiz on behalf of Defendants. Accordingly,

Jane/John Doe had Defendants Insurefarm and Abdulaziz actual authority to solicit

Plaintiff through illegal telemarketing calls.


**APPARENT AUTHORITY**


71. Mr. Salaiz realleges paragraphs one through seventy and incorporates them herein as if

set forth here in full.


72. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer

has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales
entity access to information and systems that normally would be within the seller's
exclusive control, including: access to detailed information regarding the nature and
pricing of the seller's products and services or to the seller's customer information. The
ability by the outside sales entity to enter consumer information into the seller's sales or
customer systems, as well as the authority to use the seller's trade name, trademark and
service mark may also be relevant. It may also be persuasive that the seller approved,
wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be
responsible under the TCPA for the unauthorized conduct of a third-party telemarketer
that is otherwise authorized to market on the seller's behalf if the seller knew (or
reasonably should have known) that the telemarketer was violating the TCPA on the
seller's behalf and the seller failed to take effective steps within its power to force the
telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).


73. Defendants Insurefarm and Abdulaziz authorized Jane/John Doe to generate prospective

business for them through illegal telemarketing.

74.  Jane/John Doe called and transferred calls to Defendant Insurefarm who solicited Mr.

Salaiz for a final expense insurance plan. The integration of their sales efforts was so

PLAINTIFF'S ORIGINAL COMPLAINT

seamless that it appeared to Mr. Salaiz that Defendants all appeared to be acting together as the same company.

75. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that Jane/John Doe had received permission to sell, market, and solicit the products of Defendants Insurefarm and Abdulaziz.

76. As a direct and proximate result of Jane/John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

77. Mr. Salaiz realleges paragraphs one through seventy-six and incorporates them herein as if set forth here in full.

78. Defendants Insurefarm and Abdulaziz knowingly and actively accepted business that originated through the illegal calls placed by Jane/John Doe.

79. By accepting these contacts and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Jane/John Doe, as described in the Restatement (Third) of Agency.

80. Jane/John Doe called Mr. Salaiz and solicited customers to transfer to Defendant Insurefarm.

81. Defendants Insurefarm and Abdulaziz received new customers and the possibility of new business.

82. Defendants Insurefarm and Abdulaziz ratified Jane/John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

83. Defendants Insurefarm or Abdulaziz further ratified Jane/John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

84. As a direct and proximate result of Jane/John Doe's illegal phone calls, Mr. Salaiz and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## PERSONAL LIABILITY OF DEFENDANT ABDULAZIZ

85. Mr. Salaiz realleges paragraphs one through eighty-four and incorporates them herein as if set forth here in full.

86. Upon information and belief Defendant Abdulaziz refuses to take any action to stop or curtail the unlawful sales practices and illegal phone calls because these practices benefit Defendants Insurefarm and Abdulaziz financially.

87. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personInsurefarm liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

88. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personInsurefarm liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personInsurefarm liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity.*"  Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985)

(Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980))

(Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

89.  Upon information and belief, at all times material to the Complaint, acting alone or in concert with others, Defendant Abdulaziz has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Insurefarm including the acts or practices set forth in this Complaint.

90.  Upon information and belief, Defendant Abdulaziz is the principal director and operator of Defendant Insurefarm, controls the day-to-day operations of Defendant Insurefarm and directed their representatives, employees, agents, salespersons, and or telemarketers to make TCPA violating phone calls to solicit final expense insurance on behalf of Defendant Insurefarm.

91.  Upon information and belief, Defendant Abdulaziz is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

92.  Upon information and belief, Defendant Abdulaziz is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter his behavior.  Defendant Abdulaziz is the sole director of Defendant Insurefarm and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Abdulaziz has taken no steps to stop the behavior because this behavior benefits Defendants financially.

93.  Defendant Abdulaziz should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

94. Defendant Abdulaziz should be held liable because to do otherwise would simply allow him to dissolve Defendant Insurefarm and set up a new corporation and repeat his conduct thus frustrating the purposes of the TCPA and DTPA.

## CLASS ALLEGATIONS

95. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) Defendant texted (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

> **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant texted (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

96. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finInsurefarm adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

97. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

98. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

99. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

100. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

101. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

102. Whether the unsolicited calls were caused by the Defendants;

103. Whether the unsolicited calls promoted the Defendants' products or services;

104. Whether the Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

105. Whether the Defendants obtained written express consent prior to sending the text messages;

106. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

107. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

108. Mr. Salaiz realleges paragraphs one through one hundred and seven and incorporates them herein as if set forth here in full.

109. The calls harmed Mr. Salaiz by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

110. The calls harmed Mr. Salaiz by trespassing upon and interfering with his rights and interests in his cellular telephone.

111. The calls harmed Mr. Salaiz by intruding upon his seclusion.

112. Mr. Salaiz has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

113. Mr. Salaiz realleges paragraphs one through one hundred and twelve and incorporates them herein as if set forth here in full.

114. Jane/John Doe placed telephone calls to Mr. Salaiz's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

115. The calls were made for the express purpose of soliciting customers for Defendant Insurefarm's goods and services.

116. When Mr. Salaiz and the Class answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

117. As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. §

227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

118. Defendants telemarketer and/or their agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

119. If the court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**<u>Second Cause of Action</u>:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(<u>On behalf of Plaintiff and the TCPA Class</u>)**
**(Against All Defendants)**

120. Mr. Salaiz realleges paragraphs one through one hundred and nineteen and incorporates them herein as if set forth here in full.

121. The telephone numbers of Mr. Salaiz and the Class are registered on the Do Not Call Registry.

122. Defendants' telemarketer and/or its agents placed unsolicited phone calls to Mr. Salaiz's and the Class members' DNC registered telephones without having their prior written consent to do so.

123. Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

124. Defendants soliciting phone calls were made for the commercial purpose of selling final expense insurance to consumers.

PLAINTIFF'S ORIGINAL COMPLAINT

125. As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages.

126. Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

127. Mr. Salaiz also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**Third Cause of Action:**
**Violations of The Texas Business and Commerce Code § 305.053**
**(On Behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

128. Mr. Salaiz realleges paragraphs one through one hundred and twenty-seven and incorporates them herein as if set forth here in full.

129. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

130. The foregoing acts and omissions of Defendants telemarketer and/or its agents constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 *et seq.*

131. Upon information and belief, Mr. Salaiz sent Defendants a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

PLAINTIFF'S ORIGINAL COMPLAINT

132. Mr. Salaiz seeks for himself an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code § 305.053(b)

133. Mr. Salaiz seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 305.053(c).

**Fourth Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

134. Mr. Salaiz realleges paragraphs one through one hundred and thirty-three and incorporates them herein as if set forth here in full.

135. Defendants' illegal solicitation sales calls to Mr. Salaiz and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

136. Upon information and belief the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls through Jane/John Doe to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

137. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

138. Upon information and belief, Mr. Salaiz sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

139. As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Mr. Salaiz may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

140.   As a result of the Defendants violations of §302.101, Mr. Salaiz seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz, individually and on behalf of the Class prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.  An order declaring that the Defendants actions, as set out above, violate 227(b) of the TCPA;

C.  An order declaring that the Defendants actions, as set out above, violate 227(c) of the TCPA;

D.  An order declaring that the Defendants actions, as set out above, violate the TCPA willfully and knowingly;

E.  An award of $1,500.00 per call (7) in statutory damages arising from the TCPA §227(b) for each intentional violation and in the event the Court finds the calls non-intentional an award of $500.00;

F.  An award of $1,500.00 per call (7) in statutory damages arising from the TCPA §227(c) for each intentional violation and in the event the Court finds the calls non-intentional an award of $500.00;

G.  An award of $1,500.00 per call (7) in statutory damages arising from each violation of the Texas Business and Commerce Code § 305.053;

PLAINTIFF'S ORIGINAL COMPLAINT

H.  An award of $5,000.00 per call (7) in statutory damages arising from each violation of

the Texas Business and Commerce Code § 302.101;

I.  An injunction requiring Defendants to cease sending all unlawful calls;

J.  An award of reasonable attorneys' fees and costs; and

K.  Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 22st day of October 2024.

Respectfully Submitted,

The Darwich Law Firm, LLC
  /Omar F. Darwich/
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**

**VERIFICATION STATEMENT**

I, Erik Salaiz, hereby state under oath that I am the Plaintiff in this dispute, that I have read the foregoing complaint, and that it is are true and accurate to the best of my knowledge and belief, except as to matters stated on information and belief, and that as to those matters I believe to be true.

I declare under penalty of perjury that the foregoing verification is true and correct to the best of my knowledge and belief, and as to any matter stated on belief, I believe such to be true.

Dated this 22nd day of October 2024.

/Erik Salaiz /
 Erik Salaiz